UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| In re: ) | |
| ) | |
| BIN HAO, ) | Case No. 22-10478-BFK |
| ) | Chapter 7 |
| Debtor. ) | |
| ) | |
| ) | |
| JOHN P. FITZGERALD, III, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Adversary Proceeding |
| ) | No. 22-01095-BFK |
| BIN HAO, ) | |
| ) | |
| Defendant. ) | |

**AMENDED MEMORANDUM OPINION[1]**

This matter comes before the Court on the Plaintiff's Motion for Summary Judgment. Docket No. 7. The Motion is supported by two Affidavits, one from the former Subchapter V Trustee, Angela Shortall, the other from the current Chapter 7 Trustee, Janet Meiburger. Docket No. 7, Exhibits 3–4. The Defendant filed a Response to the Motion. Docket No. 20. His Response is supported by his own Affidavit. Docket No. 20, Exhibit 1. The Court heard the parties' arguments on April 18, 2023. Docket No. 27. For the reasons stated below the Court will: (a) deny the Plaintiff's Motion on Count I, under 11 U.S.C. § 727(a)(3) (Failure to Maintain Books and Records); (b) grant in part and deny in part the Plaintiff's Motion on Count II, under 11 U.S.C. § 727(a)(4) (False Oaths or Accounts); and (c) grant the Plaintiff's Motion on Count III under 11

---

[1] This Memorandum Opinion has been amended by adding "not" to the following sentence as indicated by the italicized language: ". . . the Court and the creditors still do *not* have a clear picture of the Debtor's finances or the use and disposition of millions of dollars in the investors' funds." Page 18, *infra*.

1

U.S.C. § 727(a)(5) (Failure to Satisfactorily Explain Losses). Counts I and II will be dismissed without prejudice. The Debtor will be denied a discharge under Count III.

## Undisputed Facts

The Court finds that the following facts are not genuinely disputed.

*A. The Debtor's Bankruptcy Case.*

1. The Debtor is an individual residing in Fairfax County, Virginia. He is highly educated and financially sophisticated. He has a master's degree in aerospace engineering and a master's degree in business administration. He is a licensed real estate broker. He was employed by a hedge fund for ten years trading futures and commodities.[2]

2. The Debtor operated a business known as Qidian, LLC ("Qidian"). Through Qidian, he solicited funds from individual investors which were then invested into special purpose vehicles ("SPV's"). The SPV's made mezzanine funding loans to various real estate projects. The largest of the SPV's invested in a real estate project in Miami, which suffered a foreclosure on its property by the senior mortgage lender, resulting in a loss of the SPV investors' money.

3. The Debtor filed a Voluntary Petition under Chapter 11 with this Court on April 20, 2022. Case No. 22-10478, Docket No. 1.

4. The case was filed under Subchapter V of Chapter 11. *Id.* at 1. Angela Shortall was appointed as the Subchapter V Trustee. Case No. 22-10478, Docket No. 10.

5. The Debtor represented in his initial filings that "there is no Balance Sheet, Statement of Operations, or Cash-Flow Statement." Case No. 22-10478, Docket No. 6.

---

[2] The facts stated in this Part A and Part B, below, are taken from the Court's Findings of Fact and Conclusions of Law on the U.S. Trustee's Motion to Convert or Dismiss. Case No. 22-10478, Docket No. 254. These Findings are entitled to preclusive effect, as explained below.

6. The Debtor filed his first set of Schedules and his Statement of Financial Affairs (hereinafter "SOFA") on May 16, 2022. Case No. 22-10478, Docket Nos. 46, 49. The Schedules and/or the SOFA were amended four times since the initial filings. Case No. 22-10478, Docket Nos. 82, 83, 85, 94, 106, 158, 159.

7. The first meeting of creditors was scheduled for May 26, 2022. Case No. 22-10478, Docket No. 11. It was adjourned for the production of additional information four times, to June 8, 2022, June 23, 2022, July 5, 2022, and August 2, 2022. Case No. 22-10478, Docket Nos. 61, 70, 97, 110.

8. The Debtor did not disclose a PayPal account, nor did he disclose two cryptocurrency accounts with Coinbase and Kraken in his Schedules. Case No. 22-10478, Docket Nos. 82, 83, 85, 94, 106, 158. The Debtor disclosed these accounts in his Amended Schedules. Case No. 22-10478, Am. Schedules/Statements at 9, Docket No. 159.

9. The Debtor also had an account at Citizens Bank, which he did not disclose. He testified that the account was originally with HSBC and that he did not realize that he had an account with Citizens. He disclosed this account in his Amended Schedules. *Id*. at 4.

10. The Debtor owned membership interests in Qidian and in six limited liability companies: BAH Investments, LLC, Weymoore Ventures, LLC, Binhai Invetments, LLC, Qpoint 21, LLC, HH Little Havana, LLC and 1407 Kindred, LLC. Case No. 22-10478, UST's Ex. 3 at 12, Docket No. 148.

11. On June 22, 2022, the Debtor filed Amended Schedules. Case No. 22-10478, Docket No. 94. In the Amended Schedules, he disclosed a 50% membership interest in Prolandian, LLC, which was not previously disclosed. *Id.* at DR's Ex. 1. Prolandian was established as a

3

construction business when the Debtor and his ex-wife were married. They each own 50% of Prolandian.

12.     The total amount of unsecured claims in the case has never been clear. The Debtor's estimate of the claims has varied. The Debtor's Amended Schedules indicate that there may be as much as $41,197,667.11 in claims. Case No. 22-10478, Am. SOFA, Official Form 106Sum at 1, Docket No. 159. Claims totaling $12,747,829.11 have been filed in the case. Case No. 22-10478, Claims Register as of May 8, 2023. The Debtor disputed a number of these claims, stating that for many of them he did not sign a personal guaranty (although this might not preclude liability based on alleged fraud or securities laws theories). The Debtor testified that, in his best judgment, there were probably about $3,600,000.00 in allowable unsecured claims in the case.

   B.  *The U.S. Trustee's Motion to Convert or Dismiss the Case.*

13.     The U.S. Trustee filed a Motion to Convert or Dismiss the case in June 2022, and an Amended Motion to Convert or Dismiss in July 2022. Case No. 22-10478, Docket Nos. 78, 120.

14.     The Court held an evidentiary hearing on the U.S. Trustee's Motion on July 26, 2022. Case No. 22-10478, Docket No. 147. The Debtor was present at the hearing, was represented by counsel, and testified on his own behalf. *Id*.

15.     The Court granted the U.S. Trustee's Motion and converted the case to Chapter. 7. Case No. 22-10478, Docket Nos. 254–55.

16.     The Court found that "the Debtor has not accurately and timely disclosed all of his assets." Case No. 22-10478, Docket No. 254 at 11.

17.     The Court further found: "At this point, four months into the case, the Court has no confidence that the Debtor's filings are accurate and complete." *Id.*

4

18. The case was converted to Chapter 7. Case No. 22-10478, Docket No. 255. Ms. Shortall's duties as Subchapter V Trustee terminated, and Ms. Meiburger was appointed as the Chapter 7 Trustee. Case No. 22-10478, Docket No. 258.

C. *The U.S. Trustee's Adversary Proceeding.*

19. The U.S. Trustee filed a Complaint objecting to the Debtor's discharge on November 30, 2022. Docket No. 1.

20. The U.S. Trustee filed a Motion for Summary Judgment on February 14, 2023.[3] Docket No. 7.

21. In support of the Motion, the U.S. Trustee filed Affidavits from Ms. Shortall and Ms. Meiburger. Docket No. 7, Exhibits 3–4. Ms. Shortall stated that she "routinely requested information from the Debtor or the Debtor's attorney regarding the Debtor's financial affairs and business dealings," and that "[c]onsistently, the information that was provided resulted in additional questions and discovery of assets or transactions." Docket No. 7, Exhibit 3 at 2. She further stated: "Repeated requests for information to enable myself and the US Trustee to untangle the financial relationships between these entities, and the potential value to the estate yielded information inadequate and insufficient information to complete these analyses." *Id*. Additionally, she stated: "This failure to maintain records makes it impossible to ascertain what happened to all the creditors' money and account for the losses." *Id*. at 3.

22. Ms. Meiburger stated in her Affidavit that there were five meetings of creditors while the case was in Chapter 11, and an additional four meetings of creditors after the case was converted to Chapter 7. Docket No. 7, Exhibit 4 at 2. She stated that she "made multiple requests

---

[3] The Motion was scheduled for a hearing on March 21, 2023. Docket No. 8. The Defendant moved for a continuance, arguing that he needed to take the depositions of Ms. Shortall and Ms. Meiburger. Docket No. 18. The Court granted the request for a continuance and allowed the Defendant to file a Supplemental Opposition by April 7, 2023. Docket No. 25. The Defendant did not file a Supplemental Opposition.

5

for documentation and information from the Debtor," and that she "cannot develop an accurate picture of the Debtor's financial information based on the information I have." *Id*. at 2–3.

23. The Defendant filed a Response to the U.S. Trustee's Motion. Docket No. 20. He included his own Affidavit in the Response. *Id*. at 13–17.

24. The Debtor stated in his Affidavit that Qidian and the SPV's were out of business by January 2020, and that the two Trustees and the U.S. Trustee never requested the business records for these entities for 2017 through early 2020, when they were conducting business. *Id*. at 15.

25. He further stated that the only request for banking information he received was a single e-mail from the U.S. Trustee dated May 27, 2022, requesting banking records for the period of one year before his bankruptcy filing. *Id*.

26. Finally, the Debtor stated that he "inadvertently" failed to include the PayPal account, the cryptocurrency accounts, the Citizens Bank account and the 50% interest in Prolandian, LLC, in his Schedules and Statement of Financial Affairs. *Id*. at 16.

## Conclusions of Law

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Order of Reference entered by the U.S. District Court for this District on August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(J) (objections to discharges).

**I.    The Standard on Summary Judgment.**

Summary judgment is appropriate where there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Bankr. P. 7056. The moving party has the initial burden of showing that there are no material facts in dispute, and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986).

6

When the moving party has met its initial burden, the burden then shifts to the nonmoving party to present specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Whether a fact is material or not depends on the substantive law at issue in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

Summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action." *Celotex Corp.*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

Bankruptcy Code § 727 is intended to prevent a discharge where debtors "play fast and loose with their assets or with the reality of their affairs." *Farouki v. Emirates Bank Int'l, Ltd.*, 14 F.3d 244, 17 (4th Cir. 1994) (quoting *In re Tully*, 818 F.2d 106, 110 (1st Cir. 1987)). The Plaintiff bears the burden of proof on all of the issues raised in objecting to the Debtor's discharge. *Grogan v. Garner*, 498 U.S. 279 (1991); and *see Farouki,* 14 F.3d, at 17 ("Although the burden may shift to the debtor to provide satisfactory, explanatory evidence once the creditor has established a prima facie case, the ultimate burden rests with the creditor."). The Fourth Circuit further noted on the burden of proof issue:

> While the burden of persuasion rests at all times on the creditor objecting to discharge, it is axiomatic that the debtor cannot prevail if he fails to offer credible evidence after the creditor makes a *prima facie* case. The creditor's burden of persuasion does not obviate the necessity that the debtor provide a satisfactory explanation of the loss of his assets.

*Farouki,* at 18 n.16. (quoting *In re Reed*, 700 F.2d 986, 992–93 (5th Cir.1983)).

## II. The Preclusive Effect of the Court's Previous Findings.

The Defendant argues that the Court's Findings on the U.S. Trustee's Motion to Convert or Dismiss are not entitled to preclusive effect because they did not constitute a final order. Def. Response, Docket No. 20 at 8–9. This is simply incorrect. An Order converting a case from Chapter 11 to Chapter 7 is a final order. *In re Johnson,* 2023 WL 1464018, 6 n.4 (D. Colo. 2023) ("[C]ourts have concluded that conversions from Chapter 11 or Chapter 13 to Chapter 7 are final."); *Askri v. Fitzgerald*, 612 B.R. 500 (E.D. Va. 2020) ("The Conversion Order is a final order that Debtor has appealed as of right.").

The Defendant further argues that it would be unfair to use the Court's previous Findings because he was not apprised at the time that such findings might be used in connection with an objection to his discharge. There is no authority, however, for the proposition that a party (who was represented by counsel throughout the process) is entitled to notice of the potential estoppel consequences of the Court's findings.

Collateral estoppel bars the "'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (citing *New Hampshire v. Maine,* 532 U.S. 742, 748 (2001)). Under federal law, a party seeking to apply collateral estoppel must establish the following:

> (1) that "the issue sought to be precluded is identical to one previously litigated" ("element one"); (2) that the issue was actually determined in the prior proceeding ("element two"); (3) that the issue's determination was "a critical and necessary part of the decision in the prior proceeding" ("element three"); (4) that the prior judgment is final and valid ("element four"); and (5) that the party against whom collateral estoppel is asserted "had a full and fair opportunity to litigate the issue in the previous forum" ("element five").

*Old Town Food Service, LLC v. Gold (In re Redskins Grille I, LLC)*, 19-cv-00633 (LMB/MSN), 2020 WL 963033, at 7 (E.D. Va. 2020) (quoting *Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 217 (4th Cir. 2006)). All of the elements of collateral estoppel are present here. The issues are the same and were actually determined in a prior proceeding. The Court's determinations were a critical and necessary part of its decision to convert the case to Chapter 7. The Order converting the case was a final order and was not appealed. The Debtor had a full and fair opportunity to litigate the issues (and did so) in the prior proceeding.

The Court finds that its Findings are entitled to preclusive, collateral estoppel effect.

### III.    Count I – 11 U.S.C. § 727(a)(3) (Failure to Keep or Preserve Business Records).

Section 727(a)(3) of the Code requires the Court to deny a Debtor his or her discharge where:

> [T]he debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case[.]

11 U.S.C. § 727(a)(3).

The purpose of § 727(a)(3) is "'to give creditors sufficient information from which they can assess the debtor's estate and general financial posture.'" *U.S. Trustee v. Sieber (In re Sieber)*, 489 B.R. 531, 549 (Bankr. D. Md. 2013) (quoting *Union Bank of the Middle East, Ltd. v. Farouki (In re Farouki)*, 133 B.R. 769, 780–81 (Bankr. E.D. Va. 1991)). "'The records produced by a debtor are adequate if they reflect the debtor's finances with a fair degree of accuracy and in a manner appropriate to the debtor's business.'" *Id.* at 549. Fraudulent intent is not an element under § 727(a)(3). *In re Scott*, 172 F.3d 959, 969 (7th Cir. 1999).

  A. *The Books and Records of the Debtor's Related Entities.*

The Debtor argues that § 727(a)(3) speaks in terms of the "debtor's financial condition," and that Qidian and the related SPV's are not in bankruptcy. The Debtor asserts, therefore, that his failure to produce books and records for these entities cannot constitute grounds for the denial of his discharge. The majority of courts, however, have rejected this restricted reading of § 727(a)(3). *Union Planters Bank N.A. v. Connors*, 283 F.3d 896 (7th Cir.2002); *In re Pansier,* 613 B.R. 119, 151–52 (Bankr. D. Wis. 2020); *In re Kandel,* Adv. Pro. No. 12–6003, 2015 WL 1207014 (Bankr. N.D. Ohio Mar. 13, 2015); *In re Asad*, Adv. Pro. 15–10011, 2015 WL 9581411 (Bankr. D.C. Dec. 29, 2015); *In re Womble*, 289 B.R. 836 (N.D. Tex. 2003).

The Court in *Kandel* had a particularly helpful discussion of the issue, as follows:

> Most courts… have focused on the purpose of § 727(a)(3), which is to provide all records "needed in order for the bankruptcy trustee and creditors to have accurate information concerning the debtor's assets that might be available for liquidation." *In re Spitko,* 357 B.R. at 308. When a corporation and debtor are "closely connected," business records often become paramount to obtaining an accurate picture of a debtor's individual financial position. *Id; Blanchard v. Ross (In re Ross),* 1999 WL 10019, at *4–5 (Bankr.E.D.Pa.1999); *In re Thomas*, 2003 WL 21981707, at *11 ("[I]n situations where the facts indicate that a debtor exercised control over and conducted business through a closely held corporation, § 727(a)(3) inquiries cannot be artificially limited to those records that are, strictly speaking, those of the debtors."). Because § 727(a)(3) requires, as a precondition to discharge, that a debtor produce sufficient information allowing creditors to track the debtor's financial situation "with substantial completeness and accuracy for a reasonable time past to present," withholding business information substantially intertwined with the debtor's personal capacity completely ignores the purpose of the statute. *In re Juzwiak,* 89 F.3d at 427; *In re Thomas*, 2003 WL 21981707, at *10; *In re Bishop*, 420 B.R. 841. Section 727(a)(3) prevents creditors from having to guess about a debtor's actual financial position. *Micro Connections, Inc. v. Shah (In re Shah),* 388 B.R. 23, 32–33 (Bankr.E.D.N.Y.2008); *Union Bank of the Middle E., Ltd. v. Farouki (In re Farouki),* 133 B.R. 769, 781 (Bankr.E.D.Va.1991). Any other outcome would allow a closely held business to work as a shield, protecting relevant information "behind the veil of the corporate façade." *In re Ross*, 1999 WL 10019, at *5…The court believes the majority position is the better reasoned approach. A lack of business records relating to a company substantially intertwined with a debtor may provide the basis for the denial of a debtor's individual discharge under § 727(a)(3).

*In re Kandel*, 2015 WL 1207014 at 8.

The minority view is represented in other cases where, absent proof sufficient to sustain an alter ego or veil-piercing claim, the courts have held that the debtor had no duty to produce business records for related entities. *See Judgment Factors, LLC v. Packer (In re Packer)*, 816 F.3d 87 (5th Cir. 2016); *In re Aydt*, 2022 WL 107334 (Bankr. E.D. Wis. 2022). In this Court's view, this narrower reading of § 727(a)(3) would make the statute almost meaningless, in a world where virtually all business activities are conducted through the use of corporations, limited liability companies and partnerships.

The Debtor's financial condition in this case was inextricably bound up with that of Qidian and the SPV's. The Debtor's financial condition could *only* be discerned from the books and records of Qidian and the SPV's. The Debtor does not deny that he has access to, and controls the business records of his entities. *See* Debtor's Affidavit, Docket No. 20 at 15 ("Acting as the manager of Qidian, I maintained and continue to hold [business records] . . ."). Indeed, the Debtor relies on these records in his own defense. *Id*. ("The banking records of Qidian and the banking records of the SPV's demonstrate that…").

The Court concludes that the books and records of the Debtor's related business entities not only are relevant, they are essential to determining the Debtors' financial condition in this case.

B.    *Did the Debtor Fail to Keep Books and Records?*

The Debtor, as noted, is a highly educated and financially sophisticated individual. He stated in his Affidavit that he "can account for the funds" he put into Qidian, and that "the banking records of Qidian and the banking records of the SPV's demonstrate the uses made by Qidian and the SPV's of all funds received from the third parties incident to the investments they made in the SPV's." Def. Aff. at 15. The Trustees and the creditors, however, are entitled to more than just the Debtor's conclusory statements that the funds can be accounted for. The Debtor is under an

11

obligation to produce the actual books and records demonstrating the sources and uses of the investment funds. His conclusory statements will not be sufficient.

Still, there is a material dispute of fact on what documents the two Trustees, or the U.S. Trustee specifically requested, and for what period of time. The Debtor states in his Affidavit that Qidian and the SPV's were out of business by January 2020, and that the two Trustees and the U.S. Trustee never requested the business records for these entities for 2017 through 2020, when they were conducting business. *Id*. He further states that the only request he received for banking information was a single e-mail from the U.S. Trustee dated May 27, 2022, requesting banking records for the period of one year before his bankruptcy filing. *Id*. Neither of the Trustees' Affidavits contains a list of documents that were requested and not produced. Taking the evidence in the light most favorable to the non-moving party, here the Defendant, the Court finds that there is a genuine issue of fact on what was requested and for what period of time.

The Court finds that there is a genuine issue of fact on Count I. The Court will deny the Plaintiff's Motion under 11 U.S.C. § 727(a)(3) (Failure to Maintain Books and Records). Count I will be dismissed without prejudice.[4]

### IV.    Count II – 11 U.S.C. § 727(a)(4) (False Oaths or Accounts).

Section 727(a)(4) of the Code provides, in relevant part, that the Court shall grant the debtor a discharge, unless "the debtor knowingly and fraudulently, in or in connection with the case— (A) made a false oath or account[.]" 11 U.S.C. § 727(a)(4). To prevail under § 727(a)(4)(A), the Plaintiff must prove that "the debtor had the intent to defraud either through direct evidence or by pointing to specific facts and circumstances that, in the aggregate, demonstrate a pattern of reckless

---

[4] The Court states "without prejudice" in the dismissal of Count I and Count II, below, because in the event that the Defendant appeals the ruling on Count III, and the Court's ruling is reversed and remanded on Count III, the Plaintiff will be entitled to renew Counts I and II on remand.

12

disregard for the truth sufficient to warrant an inference of fraudulent intent." *Webb v. Isaacson (In re Isaacson),* 478 B.R. 763, 784 (Bankr. E.D. Va. 2012) (quoting *Spencer v. Hatton (In re Hatton),* 204 B.R. 470, 475 (Bankr. ED. Va. 1996), *aff'd*, 204 B.R. 477 (E.D. Va. 1997)). Additionally, the false oath or account "must be material in that 'it adversely affects the ability of the trustee or creditors to fully discover the debtor's assets and financial condition.'" *Id.* (quoting *Jalajel v. Pugsley,* No. 1:11cv163, 2011 WL 1348312, at 2 (E.D. Va. Apr. 8, 2011)). "A material omission from a debtor's sworn schedules or statement of affairs is a false oath and may be grounds for denying a discharge." *Jalajel*, 2011 WL 1348312 at 2. A reckless indifference to the truth, as evidenced by a pattern of omissions and inaccuracies, is the functional equivalent of fraud. *See In re Isaacson*, 478 B.R. 763 at 784; *Cho v. Park (In re Seung Chan Park)*, 480 B.R. 627, 637 (Bankr. D. Md. 2012); *Nat'l Post Office Mail Handlers, et. Al. v. Johnson (In re Johnson)*, 139 B.R. 163, 170 (Bankr. E.D. Va. 1992).

A. *The Debtor Made False Oaths in This Case.*

The Court previously found that the Debtor made false oaths in failing to disclose the following assets:

- PayPal Account;
- Cryptocurrency Accounts (Coinbase and Kraken);
- Citizens Bank Account; and
- 50% Interest in Prolandian, LLC.

Case No. 22-10478, Findings of Fact and Conclusions of Law, Docket No. 254 at 3–4.

The Plaintiff, therefore, has established that the Defendant made false oaths in his bankruptcy case.

B. *The False Oaths Were Material.*

As the District Court for this District has held, "there is no *de minimis* exception to the Bankruptcy Code's disclosure requirements." *Dean v. McDow*, 299 B.R. 133, 140 (E.D. Va. 2013). This is not to say that materiality does not matter. Rather, a bank account or a cryptocurrency account that might have a very low or even a negative balance on the petition date can be highly useful to the Trustee and the creditors in reconstructing the Debtor's financial condition and transactions leading up to the bankruptcy case. The Debtor previously testified, for example, that Qidian was the source of the funds in his undisclosed Kraken account. Case No. 22-10478, 2022, Docket No. 306 at 54–55. These accounts would have been of obvious use to the Trustees and the creditors in tracing their funds in and out of Qidian and the SPV's.

The Court finds that the failure to disclose the cryptocurrency accounts, the PayPal account, the Citizens Bank account and the 50% interest in Prolandian, LLC, all were material to the administration of the bankruptcy estate.

C. *Fraudulent Intent.*

Notably, although the Court found that the Debtor made material misstatements in his Schedules and Statement of Financial Affairs in its Findings on the U.S. Trustee's Motion to Dismiss the case, it stopped short of making a finding that the Debtor fraudulently intended to do so, because such a finding was not necessary to the resolution of the U.S. Trustee's Motion at the time. Case No. 22-10478, Findings of Fact and Conclusions of Law, Docket No. 254. There was no finding on fraudulent intent in the Court's previous Findings.

In the case of *In re French*, the Fourth Circuit addressed summary judgment in the context of both false oaths and the alleged failure to keep adequate records from which the Debtor's financial condition could be ascertained. 499 F.3d 345 (4th Cir. 2007). In *French*, the Fourth Circuit noted that "a determination concerning fraudulent intent depends largely upon an

assessment of the credibility and demeanor of the debtor." *Id.* at 353 (quoting *Williamson v. Fireman's Fund Ins. Co.*, 828 F.2d 249, 252 (4th Cir. 1987)). The Court further held that, on summary judgment, the bankruptcy court "is simply not empowered" to make credibility determinations between witnesses whose testimony appears to be in conflict. *Id*. at 354.

The Debtor maintains in his Affidavit that his failure to list these assets was "inadvertent." Def. Aff., Docket No. 20 at 16. The Debtor's intent ("knowingly and willfully") is a disputed issue for trial. The Court, therefore, will: (a) grant the Plaintiff's Motion in part that the Debtor made material misstatements in his Schedules and Statement of Financial Affairs; and (b) deny the Plaintiff's Motion on Count II on the issue of fraudulent intent. Count II will be dismissed without prejudice.

V.     **Count III – 11 U.S.C. § 727(a)(5) (Failure to Explain Losses).**

Finally, under § 727(a)(5) of the Bankruptcy Code, a debtor may be denied a discharge where "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities . . . ." 11 U.S.C. § 727(a)(5). Section 727(a)(5), like § 727(a)(3), contains no intent requirement. 11 U.S.C. § 727(a)(5); *In re McDonald*, 29 F.4th 817, 823 (6th Cir. 2022). Under § 727(a)(5), the objecting party must establish that "'the debtor at one time owned a substantial identifiable asset, not too remote in time to the date of the commencement of the case; [and] that on the date of filing the voluntary petition the debtor no longer had the particular asset.'" *In re Heffner*, Adv. No. 15-01177-BFK, 2016 WL 8603707 (Bankr. E.D. Va. Aug. 26, 2016) (quoting *Clayton v. Ferebee (In re Ferebee)*, Adv. No. 10-07086-SCS, 2012 WL 506740, at 8 (Bankr. E.D. Va. Feb. 15, 2012)).

The courts typically employ a burden-shifting analysis. Once the Plaintiff demonstrates that there has been an unexplained loss of assets or a deficiency, the burden shifts to the debtor to

15

provide a reasonable explanation. *Floret, L.L.C. v. Sendecky (In re Sendecky)*, 283 B.R. 760, 765 (B.A.P. 8th Cir. 2002) (citing *Cadle Co. v. Stewart (In re Stewart)*, 263 B.R. 608, 618 (B.A.P. 10th Cir. 2001), aff'd, 35 Fed. App'x 811 (10th Cir. 2002)); *In re Vereen*, Adv. No. 21-09001, 2022 WL 1017220 (Bankr. M.D. N.C. Apr. 4, 2022); *In re Hylle*, 641 B.R. 203 (Bankr. E.D. Ark. 2022); *In re Myers*, 2018 WL 4701387 (Bankr. D. Md. 2018). In order to constitute a "satisfactory" explanation, the debtor's version of events "must not consist of vague and indefinite explanations." *In re Ferebee*, 2012 WL 506740, 8 (citing *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 619 (11th Cir. 1984)).

The Court finds first that the Plaintiff has met his burden to demonstrate that there has been an unexplained loss of assets or a deficiency of assets to meet the Debtor's liabilities. The Debtor, by his own account, solicited millions of dollars from the investors and put the money into various SPV's. *See* Am. SOFA, Official Form 106 Sum, Docket No. 159 at 15 (listing $41,197,667.11 in claims). The Debtor, Qidian and the SPV's were in possession of these funds at one time. By the time the Debtor filed for bankruptcy protection, not a dime was left in a single bank account.

The Debtor, on the other hand, has not provided a satisfactory explanation for the loss of the funds. His only explanation is that during the two and one-half years preceding the bankruptcy "one developer [Metronomics Holdings, LLC] filed bankruptcy [and] some said they will pay but never delivered." Def. Aff., Docket No. 20 at 13. Not all of the investors' money went into the Metronomics project, however. The Debtor describes various SPV's and multiple developers, in his Affidavit. *See id.* at 15 ("[I]nvestments in various real estate development projects undertaken by regional developers" and "records of the funds received and collected by Qidian and the SPV's and distributed to the borrowers/developers"). Other than the Metronomics project, the Debtor did not identify any of the other projects or what became of the investors' money in those projects.

Even for the Metronomics project, the Debtor's explanation was vague. It is unknown how much was invested in Metronomics, when it was invested, and what returns if any were paid to Qidian or the SPV's during the life of the project. Metromonics filed a Chapter 11 bankruptcy petition in the Southern District of Florida on September 23, 2020, which was later converted to Chapter 7. Case No. 20-20310-LMI. In its List of 20 Largest Unsecured Creditors, Metronomics listed a debt to Qidian in the amount of $51,304,168.00. Case No. 20-20310-LMI, Docket No. 4 at 1. This number is about $10,000,000.00, or 25%, higher than the Debtor's estimate of all of the unsecured claims in this case of $41,197,667.11. The Court has no idea which of these numbers is closer to the actual amount of lost investments in Metronomics.[5]

Moreover, in a related adversary proceeding in this Court, in which a creditor claims that the Debtor's business activities possibly constituted a Ponzi scheme, the Debtor took the Fifth Amendment and refused to answer any questions related to the use of the investors' funds to pay other investors.[6]

The Debtor refused to answer, as follows:

> Q.  I understand. So that means the quarterly payments that these SPV's were paying to investors or Qidian was paying to the investors, were basically coming from the new investments that Qidian or the SPV's were taking, correct?
> A.  MR. FOREST: Hold on. This would be a good time to object and refuse to answer on the grounds of your Fifth Amendment privilege.
> THE WITNESS: Yeah, I refuse to answer the question. I'm exercising my Fifth Amendment right.
>
> \*          \*          \*
>
> Q,  Are you refusing to answer that, Mr. Hao?
> A.  MR. FOREST: Yes, he is.

---

[5] In October 2022, the Trustee in the Metronomics bankruptcy case issued a Subpoena to Qidian for its financial records related to Metronomics going back to 2015. Case No. 20-20310-LMI, Docket No. 548.

[6] The Court can take judicial notice of pleadings on its own docket. Fed. R. Evid. 201; *In re Giordano*, 472 B.R. 313, 49 n.15 (Bankr. E.D. Va. 2012); *In re Bernick*, 440 B.R. 449, 450 (Bankr. E.D. Va. 2010). It is particularly appropriate in this case to take judicial notice of the proceedings in the *Song v. Hao* adversary proceeding. Adv. No. 22-01040-BFK. The Plaintiff in this adversary proceeding is the U.S. Trustee. Ms. Song was an actual investor with the Debtor.

      THE WITNESS: Fifth Amendment.

*Song v. Hao*, Adv. Pro. 22-1040-BFK, Docket No. 65, Exhibit 4 at 44–45.

      The Defendant is entitled to take the Firth Amendment, but this is hardly indicative of a willingness on his part to explain to the creditors what happened to their money. The Plaintiff in this adversary proceeding is entitled to a negative inference as a result. *See Weddell v. Landis*, 551 B.R. 74 (D. Nev. 2106) (holding that a bankruptcy court in a § 727 case is entitled to take a negative inference from the Debtor's refusal to testify); *In re Hazelrigg*, Adv. No. 12-01966-TWD, 2013 WL 6154102 (9th Cir. B.A.P. 2013) ("Even if we considered the Fifth Amendment privilege issue, however, the negative inferences that the bankruptcy court may make from a debtor invoking the Fifth Amendment privilege would not be helpful to the Debtor here."); *In re Lopez,* 532 B.R. 140, 158 (Bankr. C.D. Cal. 2013) ("Exercising her privilege against self-incrimination did not excuse Lopez from cooperating with the Trustee and does not protect Lopez from being denied a discharge. . . [t]he trier of fact is also free to draw adverse inferences from a failure of proof arising out of the assertion of the privilege.")

      After nine (9) meetings of creditors (five (5) when the case was in Chapter 11 and four (4) in Chapter 7) and multiple amendments to the Schedules, the Chapter 7 Trustee, the Court and the creditors still do not have a clear picture of the Debtor's finances or the use and disposition of millions of dollars in the investors' funds. The Court finds that there is no genuine dispute that the Debtor has failed to satisfactorily explain the loss of his assets or the deficiency of his assets to meet his liabilities. The Court will grant the Plaintiff's Motion for Summary Judgment on Count III.

## Conclusion

      The Court, therefore, will enter a separate Order under which:

A. The Court will deny the Plaintiff's Motion for Summary Judgment on Count I, under 11 U.S.C. § 727(a)(3) (Failure to Maintain Books and Records). Count I will be dismissed without prejudice.

B. On Count II, under 11 U.S.C. § 727(a)(4) (False Oaths or Accounts), the Court will: (a) grant the Plaintiff's Motion for Summary Judgment in part that the Debtor made material misstatements in his Schedules and Statement of Financial Affairs; and (b) deny the Plaintiff's Motion on the issue of fraudulent intent. Count II will be dismissed without prejudice.

C. The Court will grant the Plaintiff's Motion for Summary Judgment on Count III. The Defendant will be denied a discharge under 11 U.S.C. § 727(a)(5) (Failure to Satisfactorily Explain Losses).

D. The Clerk will mail copies of this Amended Memorandum Opinion and the accompanying Amended Order, or provide cm-ecf notice of their entry, to the parties below.

Date: May 16 2023

Alexandria, Virginia

/s/ Brian F Kenney
The Honorable Brian F. Kenney
United States Bankruptcy Judge

Entered On Docket: May 16, 2023

Copies to:

Jack Frankel, Esq.
1725 Duke Street, Suite 650
Alexandria, VA 22314
*Counsel for Plaintiff*

John P. Fitzgerald, III, Esq.
1725 Duke Street, Suite 650
Alexandria, VA 22314
*Plaintiff*

John P. Forest, II, Esq.
11350 Random Hill Rd., Suite 700
Fairfax, VA 22030
*Counsel for Debtor/Defendant*

Bin Hao
13008 Cabin Creek Rd.
Herndon, VA 20171
*Debtor/Defendant*